UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                            )
KELLY PETERS,               )
(f/k/a) KELLY ANNE ONEILL   )
                            )
            Plaintiff,      )
                            )
        v.                  )      CIVIL ACTION
                            )      NO. 14-11764-WGY
CAROLYN W. COLVIN,          )
Acting Commissioner, Social )
Security Administration,    )
                            )
            Defendant.      )
                            )
```

YOUNG, D.J.                                    September 23, 2015

MEMORANDUM & ORDER

## I.    INTRODUCTION

This is an action under sections 1631(c)(3) and 205(g) of the Social Security Act through which Kelly Peters ("Peters") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her Social Security disability ("SSDI") benefits.  Compl., ECF No. 1.  Peters avers that the Administrative Law Judge (the "hearing officer") did not base his denial of SSDI benefits on substantial evidence.  Id. ¶ 9.  Specifically, Peters argues that in deciding that she was not disabled because she was capable of performing her past relevant work, the hearing officer made a credibility determination that was not supported

1

by substantial evidence.   Mem. Law Supp. Pl.'s Mot. Order

Reversing Comm'r's Decision ("Pl.'s Mem.") 17, ECF No. 16.

Furthermore, Peters claims that the hearing officer did not give

proper weight to the opinion of her long-term treating

physician.   Id. at 20.   Thus, Peters asks this Court to reverse

the decision of the hearing officer and award her SSDI benefits,

Compl. 3, or alternatively, remand her claim for further

assessment, Pl.'s Mem. 20.   The Commissioner requests that this

Court affirm her decision denying Peters SSDI benefits.   Mem.

Law Supp. Def.'s Mot. Affirm Comm'r's Decision ("Def.'s Mem.")

18, ECF No. 20.

    **A.   Procedural Posture**

    On February 2, 2011 Peters applied for SSDI benefits, and

on February 3, 2011, she applied for supplemental security

income, initially alleging a disability onset date of November

1, 2005.   She later amended the disability onset date to August

10, 2009 at the administrative hearing.   Compl. ¶ 4;

Administrative Record ("Admin. R.") 9, 30.   Both applications

were denied on June 16, 2011 and again after reconsideration on

October 20, 2011.   Admin. R. 9.   After filing a written request,

a hearing on her claim was held on January 22, 2013 in front of

the hearing officer at the Boston Office of Disability.   Id.;

Compl. ¶ 6.   The hearing officer denied Peters SSDI benefits in

a decision dated February 15, 2013.   Admin. R. 16; Compl. ¶ 7.

Peters appealed the hearing officer's decision, but on February 10, 2014 the Appeals Council informed her that it declined to review the hearing officer's decision and as such, the decision was final.  Admin. R. 1, Compl. ¶ 8.

On April 10, 2014, Peters filed the present action in the United States District Court for the District of Massachusetts seeking review of her claim pursuant to 42 U.S.C. §¶ 405(g) and 1383(c)(3).  Compl. ¶ 3.  Peters filed a motion and supporting memorandum seeking a reversal of the Commissioner's decision. Pl.'s Mot. Order Reverse Comm'r's Decision, ECF No. 15; Pl.'s Mem.  In response, the Commissioner filed a motion and supporting memorandum requesting that her decision be affirmed. Def.'s Mot. Affirm Comm'r's Decision, ECF No. 19; Def.'s Mem. Peters replied in further support of her motion.  Pl.'s Reply Mem. ("Pl.'s Reply"), ECF No. 24.

B.   **Factual Background**

At the time of the alleged disability onset date of August 10, 2009, Peters was a thirty-one year old woman suffering from symptoms caused by fibromyalgia, osteoarthritis, overactive bladder, and degenerative disc disease.  Admin R. 11; 30.  The record contains voluminous evidence of medical treatment that occurred prior to her alleged disability onset date, but as this is not relevant to whether Peters was disabled in August 2009, it is not discussed in detail here.  In December 2008, Peters

sought medical treatment for widespread pain all over her body and a physical examination revealed trigger points, which are related to fibromyalgia.  Admin. R. 404, 407.  At this appointment, Peters stated that while she could perform household chores, she could not stand or carry more than 20 pounds for long periods of time.  Id. at 404.  On March 11, 2009 Peters returned to the doctor's office complaining of various sources of pain.  Id. at 744-45.  The record confirms that she was diagnosed with fibromyalgia previously, but by April 2009, Peters told her treating physician, Dr. Nsa Henshaw ("Dr. Henshaw"), that her pain was reduced to a five out of ten and she was able to swim once a week.  Id. at 743-44.  Dr. Henshaw referred her to an acupuncturist because she "seem[ed] to have exhausted all classes of meds."  Id. at 744.

When Peters met with the acupuncturist, she stated that her pain was at a five or six out of ten, but the pain was constant. Id. at 759.  Peters further informed the acupuncturist that while she was capable of caring for her then-two-year-old son, it was difficult and she could not pick him up on days when she experienced a great amount of pain.  Id.  She also stated that her pain was such that she could not go grocery shopping or do laundry.  Id. at 760.  At a follow-up visit with Dr. Henshaw, Peters stated that the acupuncture was ineffective as she

continued to experience back pain, joint pain, and stiffness. Id. at 785-86.

On August 10, 2009 Peters went to the emergency room at Massachusetts General Hospital complaining of back pain at a five out of ten on the pain scale. Id. at 789. An examination revealed that Peters' back was tender and had a limited range of motion, but otherwise her exam was normal, including an absence of trigger points, despite her history of fibromyalgia. Id. at 790-91. The emergency room physician diagnosed Peters with back pain and discharged her. Id. at 791. On November 17, 2009 Peters suffered a neck strain, causing a spasm that limited her range of movement, for which she was given pain medication. Id. at 804-05. On December 16, 2009 Peters went to the emergency room again complaining of chest pain, but it was later determined that she experienced the pain in conjunction with cocaine use. Id. at 819. On January 29, 2010 Peters saw Dr. Henshaw for a follow-up visit regarding her fibromyalgia, and Peters reiterated that her back pain was constant, her feet and knee pains were intermittent, and she was stiff and experiencing fatigue. Id. at 818-19. Dr. Henshaw referred Peters to Massachusetts General Hospital for a second opinion regarding her fibromyalgia. Id. at 819.

At Massachusetts General Hospital, Peters was seen by Drs. Tabtabai and Pinals, and she informed them of her lack of

successful treatment of her fibromyalgia and her inability to
work for the past six years due to the pain.  Id. at 827.  A
physical examination revealed symptoms consistent with
fibromyalgia and osteoarthritis of the knees, and the doctors
recommended exercise and a higher dose of medication.  Id. at
828.  On February 22, 2011 Peters again visited the emergency
room because of neck and shoulder pain that had been ongoing for
four days with a pain level of ten out of ten on the pain scale.
Id. at 847.  Her physical exam was normal besides stiffness and
tenderness in the neck, and Peters was prescribed Ultram and
Valium.  Id. at 848-49.  On March 9, 2011 Peters fell and hurt
her left knee, and Dr. Henshaw stated that she was most likely
suffering from patellar tendinitis; Peters was prescribed Motrin
and physical therapy.  Id. at 415.

On March 16, 2011 Dr. Henshaw filled out an arthritis
questionnaire on which she noted that though Peters complained
of chronic neck pain, she had not ever been diagnosed with
arthritis.  Id. at 422.  Soon after, on March 25, 2011 Peters
sought medical treatment complaining of ongoing fatigue and
nausea but stated that she was not in any pain.  Id. at 861-62.
At this time, Peters had ceased taking medication due to a
suspected pregnancy, which was confirmed on March 31, 2011.  Id.
at 862.  On June 14, 2011 Peters complained of ongoing pain that
was hindering her mobility, particularly in her right heel,

which was diagnosed as plantar fasciitis.  Id. at 898-99.  After giving birth in November, Peters reported at an appointment in December 2011 that physically she felt well and was no longer suffering from back or joint pain.  Id. at 921.  By January 25, 2012, however, Peters returned to Dr. Henshaw's office requesting to be put back on pain medication, although she did state that she was not in pain.  Id. at 931.  A physical examination revealed paraspinal tenderness and impaired mobility.  Id. at 931-32.  At this same appointment, Peters informed Dr. Henshaw that she was applying for SSDI benefits and asked for a letter to give to her attorney.  Id.  Dr. Henshaw provided such a letter on February 2, 2012 detailing the symptoms and impairments for which she had treated Peters since 2005 and emphasizing Peters' fibromyalgia diagnosis.  Id. at 886.  On January 18, 2013 Dr. Henshaw completed a medical source statement form in which she stated that she had treated Peters' fibromyalgia and chronic back pain since 2005.  Id. at 954.  She further wrote that Peters was capable of carrying ten pounds occasionally and less than ten pounds frequently, and that she could stand for less than one hour in a workday and sit for two hours in a workday.  Id.

On August 29, 2011, Dr. Libbie Russo ("Dr. Russo") reviewed the record and completed a case analysis as part of Peters' disability determination.  Id. at 48-57.  Dr. Russo opined,

based on Peters' medical record, that she could carry ten pounds occasionally and frequently, could stand or walk for two hours in an eight-hour workday, could sit for more than six hours in an eight-hour workday, and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl.  Id. at 55.  On September 28, 2011 Dr. Harris C. Faigel also reviewed Peters' medical record and stated that Peters could lift or carry twenty pounds occasionally and ten pounds frequently, could stand or walk for four hours in an eight-hour workday, could sit for more than six hours, and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl.  Id. at 79-80.

## II.  LEGAL STANDARD

### A.  Standard of Review

Although this Court can "affirm, modify, or reverse a decision of the Commissioner," Rivera v. Astrue, 814 F. Supp. 2d 30, 33 (D. Mass. 2011), in reviewing decisions of the Commissioner, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive," 42 U.S.C. § 405(g).  "As it is the role of the Commissioner to draw factual inferences, make credibility determinations, and resolve conflicts in the evidence, the Court must not perform such tasks in evaluating the record."  Rivera, 814 F. Supp. 2d at 33.  Thus, the Commissioner's findings and decisions must be upheld "if a reasonable mind, reviewing the

evidence in the record as a whole, could accept it as adequate
to support [her] conclusion." Irlanda Ortiz v. Sec'y of Health
& Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  While this
Court can alter a decision of the Commissioner, it is only
empowered to do so if "[she] has committed a legal or factual
error in evaluating a particular claim." Manso-Pizarro v. Sec'y
of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996).  This
means that as long as the record arguably supports the
Commissioner's decision, even if another outcome is equally
plausible, the Commissioner's determination must stand "'so long
as it is supported by substantial evidence.'" Rivera, 814 F.
Supp. 2d at 33 (quoting Rodriguez Pagan v. Sec'y of Health &
Human Servs., 819 F.2d 1, 3 (1st Cir.1987)).  Thus, this Court
can reverse a decision only if it was "derived by ignoring
evidence, misapplying the law, or judging matters entrusted to
experts." Bazile v. Apfel, 113 F. Supp. 2d 181, 184 (D. Mass.
2000) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)
(per curiam)).

   **B.   Social Security Disability Standard**

   A disabled person in the context of Social Security
disability benefits is someone who is unable "to do any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to

9

last for a continuous period of not less than 12 months."  20
C.F.R. § 404.1505.  The Social Security Administration employs a
five-step process to determine whether a person is disabled
within the meaning of the regulation.  Id. § 404.1520(a)(4).
First, the hearing officer asks whether the claimant is
currently performing "substantial gainful activity," meaning
work that is both substantial and gainful.  Id. §
404.1520(a)(4)(i).  Substantial work "involves doing significant
physical or mental activities," id. § 404.1572(a), while gainful
work is any work "done for pay or profit, whether or not profit
is realized," id. § 404.1572(b).  If the claimant is found to be
performing substantial gainful activity, she is not disabled.
Id. § 404.1520(a)(4)(i).  If the claimant is not currently
engaging in substantial gainful activity, the inquiry moves to
the second step, which asks whether the claimant's impairment,
or combination of impairments, is severe.  Id. § 404.1520(c).  A
severe impairment is one that "significantly limits [the
claimant's] physical or mental ability to do basic work
activities."  Id.  If the claimant's impairment does not rise to
the level of severe, she is not disabled and the inquiry ends.
See id.

    If the hearing officer deems the impairment severe he then
undertakes the third step of the analysis, where he determines
if the severity of the impairment is such that it is "equivalent

to a specific list of impairments contained in the regulations." Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6 (1st Cir. 1982). "If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled." Id. If not, then the hearing officer moves on to the fourth step, at which the hearing officer decides whether the claimant has the residual function capacity to do her past relevant work, meaning work that she has performed within the last 15 years that lasted long enough to be substantial gainful activity. 20 C.F.R. § 404.1520(e); id. § 404.1560(b). If the claimant can perform her past relevant work, she is not disabled. Goodermote, 690 F.2d at 7. If she cannot, the inquiry proceeds to the fifth and final step, at which point the burden then shifts to the Social Security Administration to show that given the claimant's age, education, and prior work experience, combined with her impairment(s), she can "perform[] other work of the sort found in the economy." Id.; see also 20 C.F.R. § 404.1512(f). If the Social Security Administration cannot show that the claimant can do any other work, she will be deemed disabled. See id.; see also 20 C.F.R. § 404.1520(f).

## III.  THE HEARING OFFICER'S DECISION

Upon reviewing all of the evidence, the hearing officer ultimately decided that Peters was not disabled between August 10, 2009 (her claimed disability onset date) and the time of his

decision.   Going through the five-step inquiry discussed above,

he first determined that Peters had not undertaken substantial

gainful activity since her disability onset date of August 10,

2009.  Admin. R. 11.  He next stated that Peters suffers from

severe impairments, specifically osteoarthritis, degenerative

disc disease, overactive bladder, and fibromyalgia, however, her

impairments do not meet the severity of one of the impairments

listed in the regulations.   Id. at 11, 13.  He specifically

noted that Peters' knee issues do not constitute a major

dysfunction of a joint under the Listings of Impairments in

section 1.02 because she is able to "ambulate effectively."   Id.

at 13.  Moving on to step four, the hearing officer decided that

Peters has a residual functional capacity to perform sedentary

work and that she

> can occasionally lift ten pounds; can frequently
> lift less than ten pounds; can stand and/or walk at
> least two hours total in an eight-hour workday; can
> sit (with normal breaks) for about six hours in an
> eight-hour  workday;  can  occasionally  climb,
> balance, stoop, kneel, crouch, and crawl; requires
> the ability to take one five-minute bathroom break
> per hour; and requires the ability to alternate
> between sitting and standing in the performance of
> work tasks.

Id.

To determine her residual functional capacity, the hearing

officer considered "whether there [was] an underlying medically

determinable physical or mental impairment(s) . . . that could

reasonably be expected to produce the claimant's pain or other symptoms." Id. Then, after finding that there was such an underlying medically determinable impairment, the hearing officer "evaluate[ed] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." Id. This included taking into account Peters' own statements about her impairments, but to the extent that her statements were not "substantiated by objective medical evidence [the hearing officer] [made] a finding on the credibility of the statements based on . . . the entire case record." Id.

The hearing officer found that based upon the entirety of the case record, Peters' statements regarding her impairments and their limiting effects were not credible. Id. at 14. Peters testified that she suffers chronic pain in her neck, back, legs, and feet that is unaffected by the medications Lyrica and Flexeril. Id. at 13. She further testified that she is unable to sit for more than half an hour at a time and stand for more than fifteen to twenty minutes. Id. at 14. She also cannot walk more than five to six city blocks before needing to rest, and her overactive bladder makes it difficult to sleep through the night. Id. at 14. The hearing officer highlighted Peters' statements regarding her daily activities, specifically her ability to care for her two children (ages five years and

fourteen months, respectively).  Peters stated that she gets her
five-year-old ready for school and feeds both children in the
mornings.  Id. at 14.  She is capable of cooking easy-to-prepare
meals such as sandwiches but cannot stand for prolonged periods
at the stove.  Id.  While her son is at school, Peters testified
that her daughter "spends the day playing independently in a
playroom while the claimant sits in a recliner in her bedroom,"
and that she can usually care for her daughter on her own, but
sometimes requires assistance from her mother "two to three days
per week when her pain and fatigue are more severe."  Id.
Peters further stated that although she has a drivers' license,
she can only drive for fifteen to twenty minutes at a time and
she is also incapable of performing household chores such as
laundry or vacuuming.  Id.  Peters also stated that she plays
pool for recreation once a week.  Id.

     The hearing officer surmised that although Peters' alleged
symptoms reasonably could be expected to be caused by her
orthopedic impairments and fibromyalgia, her testimony regarding
the limiting effects of the symptoms were "not entirely
credible."  Id.  First, the hearing officer found that "[t]he
objective and clinical evidence of record" showed that Peters'
knee problems were not so severe so as to preclude her from
sedentary work.  Id.  Namely, Peters' medical records show that
in 2004 she had a left medial meniscal repair, and in 2005 after

re-tearing her meniscus, she had a second repair "with good
result." Id.  Furthermore, the records from her July 2010
examination showed that she had a "full range of motion in both
knees with full strength, sensation, and reflexes" and although
she reported knee pain in March 2011, the physical exam revealed
no instability.  Id.  Second, the hearing officer decided that
Peters' ability to care for a five-year-old and fourteen-month-
old child "is inconsistent with her allegation of total
disability," especially considering that Peters described her
children as "pretty active."  Id. at 15, 31.  The hearing
officer further stated that he did not credit Peters' claim that
her fourteen-month-old daughter plays independently all day
while she rests in a recliner.  Id. at 15.

The hearing officer also noted that he was declining to
give much weight to the opinion of Peters' treating physician,
Dr. Henshaw, regarding Peters' disability and physical
limitations, and instead chose to rely on the opinion of the DDS
medical consultant, Dr. Russo.  Id.  Specifically, the hearing
officer concluded that the treating physician's opinion that
Peters is extremely functionally limited is "inconsistent with
[Peters'] demonstrated ability to care for two young children
ages five and fourteen months."  Id.  Thus, based on Peters'
physical impairments and their effects on her ability to
function as supported by the case record as a whole, the hearing

officer agreed with the opinion of a vocational expert and determined that Peters' residual functioning capacity is for sedentary work activity and as such she can perform past relevant work as a clerical assistant or medical secretary.  Id. The hearing officer therefore found that Peters is not disabled and summarily denied her application for SSDI benefits.  Id. at 15-16.

## IV.  ANALYSIS

Peters contests the hearing officer's determination on the ground that he did not base his credibility determination on substantial evidence.  Pl.'s Mem. 16.  Specifically, she asserts that the hearing officer did not consider all of the factors set forth by the First Circuit in Avery v. Sec'y of Health & Human Servs., 797 F.2d 19 (1st Cir. 1986), and thus his decision was not based on substantial evidence.  Id. at 17.  Peters also argues that although the hearing officer is not compelled to give controlling weight to the opinion of the treating physician, his decision should be overturned because he did not consider all of the factors enumerated in 20 C.F.R. § 416.927(d), and he did not provide a satisfactory reason for rejecting the testimony and opinion of Peters' treating physician, Dr. Henshaw.  Id. at 20.

**A. The Hearing Officer's Credibility Determination was Based on Substantial Evidence.**

As part of establishing the claimant's residual functional capacity, the hearing officer must determine first whether there is an underlying medical impairment that reasonably can be expected to produce the claimant's symptoms, and second the intensity of those symptoms and their effect on the claimant's ability to function.  Avery, 797 F.2d at 20-21.  When assessing the intensity or severity of the claimant's symptoms, the hearing officer takes into account the claimant's subjective statements regarding her symptoms.  If there are any inconsistencies, or the subjective statements are not supported by objective medical evidence, the hearing officer makes a credibility determination and decides how much weight to give the claimant's own statements about her symptoms and their effects.  Green v. Astrue, 588 F. Supp. 2d 147, 155-56 (D. Mass. 1998).  In reviewing the hearing officer's credibility determination, this Court should ask "(1) whether there is sufficient evidence to show that the hearing officer properly addressed all of her subjective allegations, and (2) if so, whether he followed the proper procedure for assessing pain and credibility."  Green, 588 F. Supp. 2d at 156.

Here, the hearing officer acknowledged that Peters' alleged symptoms reasonably could stem from her medical impairments of

fibromyalgia, orthopedic issues, and overactive bladder. Admin. R. 14. In doing so, he addressed and considered all of the medical conditions and related symptoms that Peters alleged, as required by Green. The hearing officer, however, found that Peters' testimony and statements about the severity and limiting effects of her symptoms were not credible because they were inconsistent with her testimony about her daily activities and child care capabilities. Id. at 14-15. Specifically, the hearing officer stated that Peters' statements, as well as the evidence in the record, show that she is able to care for two small, active children and can drive and prepare meals, albeit for short periods of time, so her statements regarding the severity of her alleged symptoms are inconsistent with her "activities of daily living." Id. at 15; see also Green, 588 F. Supp. 2d at 157 (discrediting claimant's subjective complaints because "[t]he hearing officer concluded that her regular reading and viewing of television discredited her allegations that she cannot concentrate or pay attention for more than a short period of time").

Peters states, however, that the credibility determination was improper because the hearing officer did not "comport with the Avery factors," and so his decision is not based on substantial evidence. Pl.'s Mem. 17. Avery instructs the hearing officer to consider (1) "the nature, location, onset . .

. and intensity of any pain"; (2)"precipitating and aggravating
factors"; (3) "type, dosage, effectiveness, and adverse side-
effects of any pain medication"; (4) "treatment, other than
medication"; (5) "functional restrictions" and; (6) "the
claimant's daily activities." Avery, 797 F.2d at 29.  The
hearing officer, however, is not required to "slavishly discuss
all [Avery] factors relevant to analysis of a claimant's
credibility and complaints of pain in order to make a
supportable credibility finding." Amaral v. Comm'r of Soc.
Sec., 797 F. Supp. 2d 154, 162 (D. Mass. 2010) (ruling that the
hearing officer's determination was supported by substantial
evidence and thus entitled to deference where he "observe[d] and
evaluate[d] a claimant, and ma[de] specific findings"); see also
Wright v. Barnhart, 389 F. Supp. 2d 13, 23 (D. Mass. 2005)
(Bowler, M.J.) (refusing to reverse the hearing officer's
decision even though he did not "ask all the Avery questions"
because he "considered the complaints of pain and its [e]ffect
on claimant's activity and discussed them in his decision").

    The hearing officer comported with Avery because he asked
Peters many questions to elicit information about her daily
activities and the effects of her symptoms on her ability to
perform those activities.  See Admin. R. 31-35.  He also had
Peters' attorney question her to develop the record regarding
her medications, treatment, pain level, and restrictions.  See

id. at 35-41.  He reached the conclusion, however, after
conducting this detailed inquiry, that her symptoms did not
affect her ability to function as severely as she claimed
because the evidence in the record showed that Peters was
capable of caring for two small children.  This is sufficient to
develop the record such that the hearing officer's decision is
adequately based on substantial evidence.  See Wells v.
Barnhart, 267 F. Supp. 2d 138, 145-46 (D. Mass. 2003) (holding
that questioning by the hearing officer that indicated that
plaintiff "plays with a five-year old child for an hour and a
half to two hours in the morning before he goes to school,
sometimes makes him breakfast, and spends time caring for him
after school" was "thorough and [was] not so flawed as to
warrant remand").  Thus, the hearing officer's credibility
determination was proper and must be accorded deference.

     Furthermore, the hearing officer did take into account
Peters' statements regarding the severity of her symptoms and
their effect on her daily life when making his recommendation.
For example, he stated that she must be allowed at least one
five-minute bathroom break per hour due to her alleged symptoms
stemming from her overactive bladder.  Admin. R. 13.  Although
the hearing officer did not agree with the severity that Peters
claimed, he did find that she has limited mobility and cannot
sit or stand for long periods of time.  Id.  As a result, the

hearing officer found that Peters could only perform work in the
sedentary range with normal breaks, including bathroom breaks
once every hour.  Id. at 15-16.  In making his finding that she
could perform sedentary work, the hearing officer based his
credibility determination on substantial conflicting evidence in
the record, and he accounted for some of Peters' own statements
about the effect of her symptoms on her daily activities.  Thus,
the Court will not overturn or remand the hearing officer's
determination.

### B. The Treating Physician's Opinion is not Entitled to Controlling Weight.

A treating physician's medical opinion is not entitled
controlling weight if it is not well supported or it is
"inconsistent with the other substantial evidence in [the] case
record."  20 C.F.R. § 404.1527(a)(2).  If the hearing officer
elects not to give the treating physician's opinion controlling
weight, he must explain his reasons for not giving the opinion
controlling weight.  20 C.F.R. § 416.927(a)(2); see also Shields
v. Astrue, 10-10234-JGD, 2011 WL 1233105, at *8 (D. Mass. 2011)
(Dein, M.J.) ("Because the [hearing officer] supported his
rejection of the treating physician's opinions with express
references to specific inconsistencies between the opinions and
the record, [his] decision not to grant [the treating
physician's] opinions significant probative weight was not

improper"). The regulations provide factors to assist the hearing officer in his determination of whether to give the treating physician controlling weight;[1] the hearing officer, however, is not required to assess every factor in detail if his decision is based on substantial evidence. See Green, 588 F. Supp. 2d at 154 (refusing to remand a case where the hearing officer did not address each factor set forth in the regulation because his decision was supported by substantial evidence and "[i]t would be a waste of judicial resources to remand this case so that another hearing officer may arrive at the same decision with more clarity").

Peters' treating physician, Dr. Henshaw, expressed her opinion that Peters could lift and carry ten pounds occasionally (up to 1/3 of an eight-hour workday), less than ten pounds

---

[1] 20 C.F.R. § 404.1527(c) provides factors for the hearing officer to consider when weighing medical opinions. The Social Security Administration promulgated this regulation seeking to harmonize divergent views among the circuits concerning the weight to be accorded to the opinion of a treating physician. See Guyton v. Apfel, 20 F. Supp. 2d 156, 167 n.14 (D. Mass. 1998) (citations omitted). Nevertheless, inconsistency persists. Id. (collecting cases); Paul R. Verkuil & Jeffrey S. Lubbers, Alternative Approaches to Judicial Review of Social Security Disability Cases, 55 Admin. L. Rev. 731, 754-55 (2003) (noting widespread perception of a "problem of inconsistent application of the law" in the Social Security disability system); Jonah J. Horwitz, Social Insecurity: A Modest Proposal for Remedying Federal District Court Inconsistency in Social Security Cases, 34 Pace L. Rev. 30, 37 (2014) ("[I]nconsistency, even if it can, at times, lead to greater generosity, is the most serious problem plaguing the [Social Security] system[.]").

frequently, could stand and/or walk less than one hour in an eight-hour workday, and sit for two hours in an eight-hour workday.  Admin. R. 954.  The hearing officer, however, rejected Dr. Henshaw's opinion that Peters suffered "extreme functional limitations" because the evidence of Peters' daily activities in the record, which indicates that she is able to care for two small children, contradicts Dr. Henshaw's finding of severe functional limitations.  See id. at 15.

Peters claims that the hearing officer's decision is not supported by substantial evidence because he did not discuss the treatment record for Peters' fibromyalgia.  Pl.'s Reply 2-3. This reasoning is faulty because the hearing officer did not have to discuss Peters' fibromyalgia treatment record; the hearing officer clearly explained why he declined to give the treating physician's opinion controlling weight, namely, Dr. Henshaw's opinion was inconsistent with the evidence in the record showing that Peters does not in fact have such severe functional limitations.  Admin. R. 15.  Such a conclusion is within the hearing officer's sound discretion.

Thus, the hearing officer did not err when he refused to give Peters' treating physician's opinion controlling weight; Dr. Henshaw's opinion that Peters is severely functionally limited in her daily activities is inconsistent with the evidence in the record showing that Peters is able to care for

two young children, prepare meals, and drive short distances. Because the hearing officer provided a satisfactory reason for his decision, and that reason is supported by evidence in the record, the Court will uphold his decision not to give Dr. Henshaw's opinion controlling weight.

## V.    CONCLUSION

For the foregoing reasons, this Court AFFIRMS the decision of the hearing officer, GRANTS the Defendant's Motion to Affirm the Commissioner's Decision, ECF No. 19, and DENIES the Plaintiff's Motion for Order Reversing the Commissioner's Decision, ECF No. 15.

SO ORDERED.

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE
